## THAYER VS. GALLUP.

Where the deposition of a witness who resided more than thirty miles from the place of trial, is offered in evidence, and the witness, who still resides at that distance, is present in court, the admitting or excluding the deposition is a matter resting in the *discretion* of the court, upon which error cannot be assigned.

The presence of the witness would *authorize* the court to exclude the deposition; and this, in general, would seem to be the better exercise of its discretion.

If the deposition is read, the opposite party may then examine the witness *viva voce*.

If the deposition is excluded, and the witness testifies to anything in conflict with it, the deposition may be used to impeach or contradict him.

Where goods are delivered to one person upon the order of another, the person who gives the order, and not the one who receives the goods, is the purchaser.

January Term, 1861.

THAYER
v.
GALLUP.

It makes no difference that the goods were delivered in pursuance of a promise to accept the order, which could not have been enforced while it was executory, because it was without consideration, or was an oral promise to pay the debt of another; the goods, when so delivered, became chargeable to the person who gave the order only, and did not constitute a consideration for a due-bill afterwards given to the vendor by the party who received them.

APPEAL from the Circuit Court for *Jefferson* County.

*Thayer* sued upon the following due-bill, which was assigned to him in December, 1859: "April 29, 1858. Due Ibberson & Griffin, for value received, one hundred and fifty-six 67-100 dollars. H. B. GALLUP." The answer of the defendant is substantially stated in the opinion of the court.

On the trial, the plaintiff offered in evidence the deposition of Gardner Gallup, which was taken at the residence of the witness, more than thirty miles from the place of trial. The witness was present in court, at the time his deposition was offered, but still resided at the place where it was taken. The defendant objected to the reading of the deposition, on the ground that the witness was present, but the court overruled the objection. The deposition stated that the witness signed the defendant's name to the due-bill, as his agent, and for a special purpose: that he had, at the time, a general authority to transact business for the defendant, and sign his name to notes; and that the due-bill was given for goods bought of Ibberson & Griffin, and used in the family of the witness, and on the farm, one-half of which was owned by the defendant. The deponent was then sworn as a witness for the defendant, and was asked the following questions: "What was the due-bill given for?" "What were the terms and conditions upon which said due-bill was given?"—to each of which the plaintiff objected, and the court sustained the objections. The jury, under the charge of the court, found for the plaintiff.

*Enos & Hall*, for appellant.

*F. Hamilton*, for respondent.

April 10.

*By the Court*, DIXON, C. J. The admitting or rejecting of the deposition in this case was a matter which rested in the discretion of the court, upon which error cannot be assigned.

The cause for taking it, which was that the witness resided more than thirty miles from the place of trial, still existed; and although he was present in court, it did not come within the provisions of section 19, chap. 137, of the Revised Statutes, nor the decision of this court in the case of *Morgan vs. Halverson*, 9 Wis., 271. The reason for taking it still existing, it was by the statute a perfect and operative legal document, but the presence of the deponent in court would undoubtedly be held a sufficient ground for the court to say that it should be excluded, and that he should be called to the stand to give his testimony orally before the court and jury. And this, in general, would seem to be the better exercise of its discretionary power. Evidence by deposition, on the trial of a common law action, is of a secondary character, and is therefore encountered by the rule of law which forbids such evidence where better exists and is in the power of the party. The oral testimony of the witness in the presence of the court and jury, is much better evidence than his deposition can be; and when it is in the power of the parties, they should in general be compelled to resort to it. But as the statute authorizes the taking of the deposition, and does not preclude its use under the circumstances of this case, we cannot say that the court erred in admitting it. After it is read, the other party clearly has the right, as was done in this case, to avail himself of a *viva voce* examination of the witness on the trial. And if the deposition should be excluded, and the witness should testify to anything in conflict with what he had deposed, the deposition might be used to impeach or contradict him. This is the rule established in *Phenix vs. Baldwin*, 14 Wend., 62, in the case of a non-resident witness whose testimony had been taken upon a commission, and who was present at the trial; and we see no reason why it should not be applied to depositions taken under our statute, where the statute itself does not exclude them. It was there held that the party who had thus taken the testimony of a witness residing abroad, was not bound to call the witness, who was then in court, and examine him *viva voce* on the trial, but that he might read the deposition.

The facts stated in the answer in this case raise no ques-

tion upon the statute of frauds, and the court was therefore wrong in sustaining the objections which were taken to the questions put to the appellant's witness. They present the very frequent case of goods delivered to one party upon the order of another; and according to them, the appellant was not the purchaser or vendee from Ibberson & Griffin, but the goods were sold to Porter & Brother, and upon their exclusive credit. The circumstances are simply these: Porter & Brother, being indebted to the appellant upon a promissory note, for the purpose of paying it gave to him an order upon Ibberson & Griffin for its amount, which the latter accepted and agreed to pay in cash. Subsequently it was arranged between him and Ibberson & Griffin that they should pay the amount to Gardner Gallup, the father of the appellant, in goods from their store. This arrangement was afterwards so far carried out, that Ibberson & Griffin delivered to Gardner Gallup goods to the amount of $156,67, in pursuance of it. Then, as the answer alleges, Ibberson & Griffin, under pretense that they wished to know how to balance their books, and to ascertain the amount to be indorsed on the note of Porter & Brother, procured from Gardner Gallup the due-bill upon which this action is brought, and induced him to sign the appellant's name to it, promising, at the same time, to return it whenever the note should be produced, and the proper indorsement made. It is manifest from this statement, that, so far as the order was executed and the goods delivered, it was wholly immaterial whether Ibberson & Griffin were indebted to Porter & Brother, so as to make their promise to pay the appellant a promise to pay their own debt; or whether the order and acceptance were oral or in writing, or expressed any consideration for their undertaking, so as to make it binding while it remained executory. For admitting it was not obligatory while unexecuted, so that the appellant could not compel its performance, still they were not prohibited from performing it; and the moment they did so, the articles or money delivered became a proper charge to Porter & Brother, and to no one else. It consequently made no difference whether they were previously indebted to Porter & Brother or not.

The order of the latter, which need not be in writing, was, so far as it was complied with, a sufficient ground for making them responsible; and the indebtedness which thus accrued was their indebtedness, and not that of the appellant. There was, therefore, assuming the facts stated in the answer to be true, no consideration for the note or due-bill in question; and the artifice by which it was obtained cannot be resorted to for the purpose of sustaining an action upon it.

The judgment of the circuit court is reversed, and a new trial awarded.