Young vs. French.

Young vs. French.

(1–3) STATUTE OF FRAUDS: *Promise of one person to answer for debt of another.* (4) *Laborer's lien on logs.*

1. The promise of one person, though in form to answer for the still subsisting debt of another, if founded upon a new and sufficient consideration, moving from the creditor and promisee to the promisor, and beneficial to the latter, is not within the statute of frauds.

2. M., B. & Co. put all their personal property, and the use and control of their mill and other real estate, into the hands of F., with power to saw up their stock of logs, dispose of the lumber made therefrom, and apply the proceeds to the payment of their debts, in a certain order; as compensation for which F. was to have a certain per centage of all moneys received and paid out, such commission to be first paid out of the lumber so manufactured and sold. Y., holding a due bill of M., B. & Co. for several hundred dollars, claimed to be due him for labor done in getting out their logs, was about to commence proceedings to enforce a laborer's lien on the logs, when F., to secure a relinquishment of such proceedings, made the following indorsement on said due bill: "This amount to be paid to Y. on or before Nov. 15, 1870. (Signed) F., Agent of M., B. & Co." The jury also find, upon conflicting oral evidence, that F. at the same time agreed to become personally responsible for said claim, and to pay it on the day named in said indorsement; and that by such indorsement and promise Y. was prevented from taking, within the time limited, the necessary proceedings to enforce his lien. *Held,* that such oral promise of F. was valid, and not within the statute of frauds.

3. Whether the labor performed by Y., and for which such due bill was given, was such as entitled him in fact to a lien on the logs, need not here be decided; it appearing that F. treated with him on the assump-

tion that he had such a lien, and chose to buy him off rather than contest its validity.

4. Plaintiff having been employed for that purpose by M., B. & Co., and having performed services *as a cook* for the workmen engaged in getting out their logs, *it seems* that he was entitled to a lien upon the logs for the amount due him for such services.   Tay. Stats., 1768, § 25.

APPEAL from the Circuit Court for *Dunn* County.

The following statement of facts in this case was originally prepared by Mr. Justice COLE as a part of his opinion:

"The firm of McGilton, Bracklin & Co., being largely in debt, with the consent of a portion of their creditors, made an agreement with the defendant in writing, by which they put their entire personal property, and the use and control of their mill and other real estate, into the possession of the defendant, with the power to saw up their stock of logs, and to dispose of the lumber manufactured to the best advantage, the proceeds of the property to be applied in the payment of their debts in the order therein named.   The plaintiff was not present, and did not consent to the arrangement.   He was a creditor of the firm to the amount of $285.75, for work and labor rendered by him in getting out the logs, and held their due bill for that amount.   By the written contract, it was agreed between the parties that the defendant should receive as compensation two and one-half per cent. on all moneys paid out by him, and a like per cent. on all moneys received, which commissions were to be treated as current expenses, and to be first paid out of the lumber manufactured and sold.   The plaintiff was advised by one of the firm of McGilton, Bracklin & Co. to file a laborer's lien upon the logs which had gone into the possession of the defendant under the agreement, and he was about taking legal steps for that purpose, when the defendant persuaded him to relinquish his proceedings, and took the due bill and made upon it this indorsement: 'This amount to be paid to *Wm. B. Young* on or before Nov. 15th, 1870.   S. B. FRENCH, Agent for McGilton, Bracklin & Co.'"

The complaint alleges that defendant made this indorsement and delivered it to plaintiff, "in consideration that plaintiff would not enforce his said lien while defendant was in charge of said business;" that afterwards, and before the expiration of the time allowed plaintiff by law for filing his claim for a lien, defendant, upon the same consideration, again promised to pay him the amount so due him, with interest; and that, relying upon said promise, plaintiff neglected to take steps to assert and enforce his lien, etc. Judgment is therefore demanded against defendant for the amount of said due bill, with interest, etc.

The answer denies that plaintiff was employed by McGilton, Bracklin & Co. in any other capacity than that of cook, and denies that he had by law any lien upon the logs of that firm for work done by him in that capacity. It also in effect denies that defendant ever undertook to pay the due bill in question otherwise than as the agent of McGilton, Bracklin & Co., and out of the proceeds of their property, in his hands, and alleges that in consequence of levies made by judgment creditors upon said property, he was left without means, as such agent, to pay plaintiff's demand.

On the trial, Mr. Bracklin, of the firm of McGilton, Bracklin & Co., testified for the plaintiff, that he gave plaintiff the due bill on the day of its date, and advised him to file a lien upon the logs therein mentioned. "*Mr. French* advised him not to take any proceedings at all, and he would pay him. *Mr. Young* said he wanted some security besides the due bill, and asked defendant to give his individual note. I don't recollect whether defendant said anything in reply; he took the due bill, and wrote that [the indorsement] on the back of it. He then handed the due bill back to the plaintiff, and said that was just as good as his individual note." The plaintiff testified in his own behalf, that after receiving his due bill he stated in the presence of defendant that he was going to file a lien on the logs; that defendant advised him against it, and stated that

he had property of the firm in his possession, and was going t ›
pay all the hands, and would pay plaintiff's claim first; that
plaintiff then said he would not file any lien if *French* would
secure him, and *French* answered : " If you don't make any
disturbance and file any lien, I will pay you ; " that plaintiff
then asked *French* for his note, but the latter answered that he
did not give any note, but could fix the due bill so that it
would be just as good as a note ; that *French* then took the
due bill and made the indorsement aforesaid ; and that, after
such indorsement was made, plaintiff said, " If I don't get my
pay of McGilton, Bracklin & Co., I shall look to you for my
pay," and *French* answered, " Certainly."

The defendant testified in his own behalf: " I never held
out to the plaintiff or anybody else that I was responsible for
any of McGilton, Bracklin & Co.'s debts.    I never agreed in-
dividually to pay this due bill.  I refused to give my own note,
or to become responsible to the plaintiff in any way."

The evidence showed that the labor for which the due bill
above mentioned was given, was performed by him " as cook
for the loggers in a logging camp of McGilton, Bracklin & Co."

The defendant asked the court to charge the jury, " that if
they found from the evidence that defendant made the promise
of payment, not as the agent of McGilton, Bracklin & Co., but
as his own promise, and that the consideration for such prom-
ise moved to and was for the benefit of McGilton, Bracklin &
Co., and not the defendant, the plaintiff could not recover."
This was refused, and the court by its charge left it to the jury
to determine as a question of fact, whether the defendant agreed
to become individually responsible for the debt, and to pay it, or
whether he acted simply as the agent of McGilton, Bracklin &
Co., instructing them, among other things, that if he did agree
to become individually responsible for the debt, and to pay it
by November 15, in case the plaintiff would forbear to sue for
his claim, then the plaintiff could recover, if said promise was
founded upon a valuable consideration moving to the defendant.

Verdict for the plaintiff; new trial denied; and defendant appealed from a judgment on the verdict.

*F. J. McLean*, for appellant:

1. By the plaintiff's own showing, the defendant's promise was collateral, contingent and conditional, thus being plainly within the statute of frauds. *Leonard v. Vredenburgh*, 8 Johns., 29; *Williams v. Leper*, 3 Burr., 1886; *Wyman v. Goodrich*, 26 Wis., 21; *Houghton v. Ely*, id., 181; *Mallory v. Gillett*, 21 N. Y., 412; *Brown v. Weber*, 38 id., 187; *Meriden Britannia Co. v. Zingsen*, 48 id., 247; *Dyer v. Gibson*, 16 Wis., 557. 2. The work of the plaintiff was "cooking" for McGilton, Bracklin & Co., and he was not entitled to a lien upon the logs for such work.

*Bundy & Macauley*, for respondent:

1. The due bill on its face is the promise of the defendant individually (*De Witt v. Walton*, 5 Seld., 570); especially as the defendant did not appear to have any authority from McG., B. & Co. to make any such contract. *Dennison v. Austin*, 15 Wis., 334. 2. The court properly treated it as a question of fact for the jury, on the evidence. *Simonds v. Heard*, 23 Pick., 120; *Shattuck v. Eastman*, 12 Allen, 369; *Tucker Manufacturing Co. v. Fairbanks*, 98 Mass., 101; *Dennison v. Austin*, above cited; *Fredendall v. Taylor*, 23 Wis., 538; *Cunningham v. Soules*, 7 Wend., 106. The promise was a new and distinct one for a new and valuable consideration, and amounts to defendant's promissory note. The statute of frauds has nothing to do with it. *Boyd v. Freize*, 5 Gray, 553; *Leonard v. Vredenburgh*, 8 Johns., 29. 3. It is immaterial whether the plaintiff was entitled to a lien or not. The defendant chose not to contend against his claim, and cannot now impeach it. *Crans v. Hunter*, 28 N. Y., 389; *Fish v. Thomas*, 5 Gray, 45; *Seaman v. Seaman*, 12 Wend., 381; *Stewart v. Ahrenfeldt*, 4 Denio, 189. The plaintiff also had a remedy by attachment or execution, which he forebore to prosecute. *Mallory v. Gillett*, 21 N. Y., 415; *Jackson v. Rayner*, 12 Johns., 291. It is not necessary

that such consideration work a benefit to defendant; it is enough that it works harm to the plaintiff. *Shook v. Van Mater,* 22 Wis., 532; *Prentice v. Wilkinson,* 5 Abb. Pr., N. S., 49. 4. The defendant had a fund in his hands, out of which he could pay the debt, and he represented that plaintiff's debt should be first paid; and he is now estopped from saying that the fund was not sufficient. *Lippincott v. Ashfield,* 4 Sandf., 611; *Fish v. Thomas,* above cited; *Jackson v. Rayner,* 12 Johns., 291.

COLE, J. In *Dyer v. Gibson,* 16 Wis., 557, the chief justice opens the opinion with some observations so very pertinent to the facts of this case and the question of law involved, that I cannot do better than quote them here. He says: "We cannot discuss the question whether the promise of one person, though in form to answer for the still subsisting debt of another, if founded upon a new and sufficient consideration moving from the creditor and promisee to the promisor, and beneficial to the latter, is within the statute of frauds, and therefore void unless it be in writing expressing the consideration and subscribed by the party making it. Decision has been multiplied upon decision, with scarce a syllable of conflict, for more than a century, that such a promise is not reached by the statute. * * The distinction is between cases where the person promising has for his object a benefit accruing to himself, in which the original debtor has no interest, and from which he derives no advantage, and where his primary and leading object is to become surety for the debt of another without benefit to himself, but for the exclusive advantage of the other parties to the contract." The distinction here made, that where the party promising has for his object some benefit and advantage accruing to himself, and on that consideration makes the promise, distinguishes the case of an original undertaking from one within the statute. *Brown v. Weber,* 38 N. Y., 187.

In the present case, there can be no doubt that the jury found, under the instructions of the court, that the defendant agreed

to become individually responsible for plaintiff's claim, and agreed to pay it by November 15th, if the plaintiff would forbear to sue or desist from enforcing his lien. Assuming that these facts were established by the evidence, the question arises, Was the defendant's promise valid ? We think the question must be answered in the affirmative. The promise was founded upon a new and distinct consideration moving from the plaintiff to the defendant. The defendant was in possession of the logs under the agreement, and he was directly interested, to the extent of his commissions, in retaining the possession and in disposing of the lumber manufactured from them. If the logs, or any portion of them, should be taken from his possession and control by the plaintiff to satisfy his lien, his commissions would be correspondingly diminished. It was a benefit and advantage to the defendant that the plaintiff should not enforce his lien and take the property out of his possession. For, if this were done, his commissions on that property alone would be lessened $15, or thereabouts. The plaintiff was induced to relinquish his lien, upon the promise of the defendant to pay the debt. And that promise, though in form it was to pay the debt of McGilton, Bracklin & Co., yet was founded upon a new and valuable consideration moving from the plaintiff to the defendant, and beneficial to the latter. It was a matter of personal interest and profit to the defendant to retain possession of the property which the plaintiff was about to seize under his lien proceeding. And in consideration that the plaintiff would relinquish that proceeding, and leave the logs in his possession, he made the promise. Under the charge of the court, the jury must have found these facts. In that case, the undertaking of the defendant was not collateral to the promise of McGilton, Bracklin & Co., but was an original contract, founded upon a sufficient consideration arising directly between him and the plaintiff. And it was quite immaterial whether such a promise was in writing or rested in parol. A class of cases quite analogous in principle to the one before us, is referred to by C. J.

COMSTOCK in his opinion in *Mallory v. Gillett*, 21 N. Y., 412, on pages 429 and 430.

It is said the plaintiff was not entitled to a lien upon the logs by reason of his services, because he acted as cook for Mc-Gilton, Bracklin & Co., and did not perform labor directly upon the logs. We do not agree in this construction of the statute giving a lien for labor and services upon logs and lumber. But it is unimportant whether the plaintiff in fact had a valid lien or not. The defendant treated with him on the assumption that he had such a lien, and chose rather to buy him off than to contest its validity.

It results from these views that the judgment of the circuit court must be affirmed.

*By the Court.* — Judgment affirmed.