NATHANIEL E. TAFT *vs.* HERBERT B. CHURCH & another.

Worcester.    October 2, 1894. — January 2, 1895.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Contract — Partnership — Evidence — Original Promise — Consideration — Transfer of Stock — Pledge — Damages — Action — Judgment — Pleading.*

An agreement in writing, under seal, was signed by A. in the name of a firm composed of A. and B., and by its terms the firm agreed, in consideration of C.'s advancing a certain sum of money to D. and accepting from D. his promissory note and shares of a certain corporation as collateral security therefor, if the note was not paid at maturity, to purchase of C. the shares or as many of them as should amount to the sum then due on the note, at a stated price per share. In an action by C. upon the agreement, it appeared that the partnership of A. and B. was doing a brokerage business, "dealing in bonds and investments of that character, and in the promotion of new companies." There was no evidence that a transaction like the one set out in the agreement was within the scope of the partnership business, or was a usual one with firms doing a similar business; nor was there any evidence of any assent or of subsequent ratification of the agreement on the part of B., who testified that he had no knowledge of the transaction until after the suit was brought. *Held*, that there was no evidence to warrant a finding against B.

In an action against the members of a partnership upon a contract foreign in its nature to the regular business of the firm, and executed in the firm name by one partner without the knowledge of the other, the admissions of the former, not made at the time when the contract was executed, are not admissible in evidence against the latter in respect to the scope of the partnership business.

If A. agrees that, in consideration of B.'s advancing a certain sum of money to C. and accepting from C. his promissory note and shares of a certain corporation as collateral security therefor, if the note is not paid at maturity, A. will purchase of B. the shares at a stated price, this is an original promise by A., and not a mere guaranty.

The seal to a contract imports a consideration, and in an action thereon none need be proved.

If one of two partners, without the knowledge or consent of the other, executes a contract which is outside the scope of the partnership business, he may be bound, although the other is not.

If A. agrees that, in consideration of B.'s advancing a certain sum of money to C.

and accepting from C. his promissory note and shares of a certain corporation as collateral security therefor, if the note is not paid at maturity, A. will purchase the shares of B., and, at the time when C.'s note matures, B. has in his possession a certificate for the shares of stock made out in C.'s name, and on the back of which are a printed form of transfer and a power of attorney to make a transfer of the shares, this is sufficient to transfer the certificate to B.

If, by the terms of a promissory note, for the payment of which shares of stock are pledged as collateral security, the pledgee has authority to sell the stock, on breach of the promise to pay the note, without notice to the pledgor, he may, before such breach, make a valid agreement to sell the stock when that contingency shall happen.

Under Pub. Sts. c. 192, § 12, the right of a pledgee to dispose of the pledge is not limited to a foreclosure thereof.

In an action upon an agreement, by the terms of which the defendant agreed that, in consideration of the plaintiff's advancing a certain sum of money to a third person and accepting from the latter his promissory note and shares of a certain ·corporation as collateral security therefor, if the note was not paid at maturity, the defendant would purchase of the plaintiff the shares, or so many of them as should amount to the sum due on the note, at a stated price per share, the fact that there is no evidence of the value of the stock is immaterial.

In an action against two persons as partners, if one only is held liable, judgment may be entered against him alone, under Pub. Sts. c. 171, § 5, and no amendment of the declaration is necessary.

CONTRACT, against Herbert B. Church and Fred D. Goode, copartners under the name of Herbert B. Church and Company, upon the following agreement:

"Boston, October 5, 1892. Nathaniel E. Taft, Esq., North Oxford, Mass. In consideration of your advancing a certain sum of money to W. F. Ellis, and accepting from said Ellis his promissory note, and accepting from said Ellis as collateral security for said note one hundred fifty-seven shares of the Burlington Electric Railway Company, we, the undersigned, hereby agree, if said above named note or any renewal thereof remains unpaid in whole or in part at the date of its maturity, to purchase from you the above named block of 157 shares, or as many of them as shall amount to the sum then due to you on the note, with interest. The price to be paid by us for said stock shall be fifteen ($15.00) dollars per share. Herbert B. Church & Co. [Seal.] In presence of Charles I. Rawson, Edward L. Collins."

Trial in the Superior Court, without a jury, before Hopkins, J., who allowed a bill of exceptions, in substance as follows.

The plaintiff offered in evidence the agreement declared on, and called as a witness Charles I. Rawson, one of the attesting

witnesses, who testified that the agreement was signed by the
defendant Church, in the presence of W. F. Ellis, Edward L.
Collins, and himself, on the day of its date; that the first time
he saw Church was in connection with this transaction, when a
promissory note was made by Ellis, some time in August, 1892;
that a note, which was put in evidence, was a renewal of the
first named note; and that a certificate of stock, which was also
put in evidence, was given as collateral security at the time of
the transaction, in August, 1892.

The note introduced in evidence was dated October 5, 1892,
and was for $2,000, payable one month after date to the plaintiff,
and recited that the maker had deposited "with this obligation,
as collateral security," a certificate for one hundred and fifty-
seven shares of the capital stock of the Burlington Electric Rail-
way Company, "with authority to sell the same without notice,
either at public or private sale, at the option of the holder or
holders hereof, on the non-performance of this promise"; and
was signed by W. F. Ellis.

The certificate introduced in evidence recited that W. F. Ellis
was entitled to one hundred and fifty-seven shares of the capital
stock of the Burlington Electric Railway Company; and con-
tained on its back a printed form of transfer, and a power of
attorney to make a transfer of the shares of stock, both signed
in blank by Ellis.

Charles M. Thayer, an attorney at law, testified that he was
counsel for the plaintiff in the transaction in question; that he
had in his possession a note which was surrendered to Ellis at
the time the note of October 5, 1892, was given; that at the
same time he had in his possession an agreement accompanying
the first named note, which he also surrendered; that, in lieu of
the first named note and the accompanying agreement, he re-
ceived the second note and the agreement in suit; that Ellis
was present when he received these papers, and signed the note
and handed it to him; that the certificate of stock given with
the first note was in his possession, and he kept it; that the
second note was protested, and he afterwards called on Church
with all these papers to see if he would take the stock as agreed;
that "I asked him if the stock had any value, and he said that,
as it was Western stock, it would have more value for him, that

he had put some of it on the market, that it would not have so much value to him except for that purpose, and that he did not think it would be of much value to me"; and that Church put him off, and did not take the stock.

The defendant Goode testified that he had no knowledge as to either of the transactions of August and November, 1892, until after this suit was brought; that Church had no authority from him to execute any such agreement as that in suit; that the business of the firm was a brokerage business, " dealing in bonds and investments of that character, and in the promotion of new companies"; that they were not stockbrokers, and did not handle stocks at all; that he did not know personally anything about the Burlington Electric Railway stock; and that he was not excluded from free access to the books of the firm.

The defendant Church testified that he signed the agreement in suit, not on the day of its date, but on October 24, 1892; that neither he nor the firm ever received any consideration for signing it; and that the firm dealt only in those stocks in which they were interested as incorporators and promoters, but that they dealt almost exclusively in municipal bonds.

Charles I. Rawson, recalled by the plaintiff, testified as follows: " When I first saw Church, in August, 1892, at the Union Depot, Ellis paid him twenty-five dollars. *Q.* Was there any conversation held at that time? *A.* Yes, the statement of what Ellis wanted him to do was made in my presence, and, upon the suggestion of Church, we stepped around into the telegraph office and Church signed some paper. I can't tell now what it was, — whether the note or agreement. And for that service he was paid twenty-five dollars by Ellis."

A letter written by C. M. Thayer, as attorney for the plaintiff, addressed to the defendants, notifying them that the note of October 5, 1892, had been protested for non-payment, and calling upon them to take the shares of stock in accordance with their agreement of that date, was put in evidence by the plaintiff.

The defendants requested the judge to rule as follows:

" 1. Upon all the evidence, the plaintiff is not entitled to recover. 2. The defendant Church could not, by virtue of general authority as partner, bind the defendant Goode by the contract

under seal set out in the declaration. 3. In order to bind the defendant Goode by the contract declared on, the plaintiff must show his previous assent or subsequent adoption thereof. 4. If Church signed the contract declared on without the knowledge of Goode, then Goode cannot be held liable thereon. 5. It is apparent on the face of the contract declared on, that said contract was made and intended for the accommodation of Ellis, and not for the benefit of, or for any consideration moving to, the firm, and the plaintiff must be held, as matter of law, affected with notice thereof, and cannot recover against the defendant Goode without proving his authority given for the making of said contract, or his assent to and ratification thereof. 6. The plaintiff must show, in order to recover on the contract alleged in the declaration, not only that said contract was properly made, and based on a sufficient consideration, but also that the plaintiff, at the time of making said contract, was the owner of the shares therein referred to, or assignee thereof, or authorized by the owner or assignee of his agent to sell and transfer said shares. 7. The authority in the note to dispose of the collateral on certain conditions did not authorize the plaintiff to sell the stock in accordance with the terms of the agreement set forth in the declaration, and said agreement is void. 8. Inasmuch as there is no evidence that the plaintiff ever foreclosed the equity to redeem the stock, and became absolute owner thereof before this suit was brought, he fails to show that he was ever ready and willing to perform his part of the contract, and cannot recover in this action. 9. As there is no evidence as to the value of the stock referred to in the alleged agreement, said stock being still in the possession of the plaintiff, it does not appear how much, if any, the plaintiff has been damaged, and he cannot recover."

The judge declined so to rule, and found for the plaintiff; and the defendants alleged exceptions.

*H. L. Baker*, for the defendant Church.

*W. O. Kyle*, for the other defendant.

*C. M. Thayer*, for the plaintiff.

LATHROP, J. 1. So far as the defendant Goode is concerned, we are of opinion that there was no evidence at the trial below which warranted the presiding justice in finding against him.

While it appeared that he and Church were in partnership doing a brokerage business, "dealing in bonds and investments of that character," and in the promotion of new companies, there was no evidence that a transaction like the one in question was within the scope of the partnership business. Nor was there any evidence that such a transaction was a usual one with firms doing a business similar to that the defendants were engaged in. There was also no evidence of any assent or of subsequent ratification on the part of Goode.

The admissions of Church, not made at the time the contract was executed, (see *Smith* v. *Collins*, 115 Mass. 388,) were not admissible against Goode in respect to the scope of the partnership business. *Tuttle* v. *Cooper*, 5 Pick. 414. See also *Ostrom* v. *Jacobs*, 9 Met. 454.

2. As to Church, we see no reason to doubt the correctness of the finding against him. He agreed to purchase certain shares of stock on the happening of a contingency. This was an original promise, and not a mere guaranty. *Monk* v. *Beal*, 2 Allen, 585. *Thayer* v. *Wild*, 107 Mass. 449. The seal imports a consideration, and none need be proved.

Although the contract did not bind the partnership, it bound the defendant Church. The fact that he attempted to bind his partner, and did not succeed, does not avoid his own act. *Wiggin* v. *Lewis*, 12 Cush. 486.

At the time that the note of Ellis matured, the plaintiff had in his possession a certificate of stock of the Burlington Electric Railway Company, made out in the name of Ellis. On the back of the certificate was a printed form of transfer and a power of attorney to make a transfer, both signed in blank by Ellis. This was sufficient to transfer the certificate to the plaintiff. *Andrews* v. *Worcester, Nashua, & Rochester Railroad*, 159 Mass. 64. By the terms of the contract between Ellis and the plaintiff, the latter had authority to sell the stock, on breach of the promise to pay the note, without notice to Ellis. While the plaintiff could not sell the pledge until there had been a breach of his contract with Ellis, we see no reason why he could not, before such breach, make a valid agreement to sell it when this contingency should happen.

The contention of Church that a foreclosure of the pledge

was necessary, under the Pub. Sts. c. 192, §§ 10, 11, is without foundation.   By § 12, the right of the pledgee to dispose of the pledge " in any other manner allowed by the contract or by the rules of law " is preserved.

These considerations dispose of all the material requests for instructions except the ninth.   As to this, it may be remarked that the fact that there was no evidence of the value of the stock is immaterial.   By the terms of the agreement all the shares were to be purchased, or so many of them as should amount to the sum due on the note at maturity, at fifteen dollars a share.

Although the action is against two persons as partners, and one only is held liable, judgment may be entered against him alone, under the Pub. Sts. c. 171, § 5, and no amendment of the declaration is necessary.   " The legal effect of the statute is, that such discrepancy between the contract declared on, and that proved, shall be deemed no variance."   *Wiggin* v. *Lewis,* 12 Cush. 486.   See also *Leonard* v. *Robbins,* 13 Allen, 217 ; *Downing* v. *Coyne,* 121 Mass. 347; *Merchants' Ins. Co.* v. *Abbott,* 131 Mass. 397, 407.

The result is, that the exceptions of the defendant Goode are sustained, and those of the defendant Church are overruled.

*So ordered.*